[Civ. No. 12729. First Dist., Div. One. Feb. 6, 1945.]

HELEN M. LOWE et al., Appellants, v. ALBERT J. RUHLMAN, Respondent.

Albert Picard and Frank J. Fontes for Appellants.

Albert D. Elledge for Respondent.

PETERS, P. J.—Plaintiffs, Helen M. Lowe and Elsa K. Dernham, who are legatees of certain real property under the will of Josephine Wester, brought this action against Albert J. Ruhlman and others for the purpose of having it determined that Ruhlman's life estate in the property had terminated by reason of Ruhlman's alleged breach of a condition subsequent. The trial court determined that there had been no breach of the condition. From the judgment denying plaintiffs' prayer to quiet their title against Ruhlman this appeal is taken.

For many years prior to 1936 Josephine Wester and Albert Ruhlman were business associates. Ruhlman had been married in 1894 but thereafter became estranged from his wife. In 1936 he and Josephine Wester were living together on the property in question, a residence in San Francisco owned by Josephine. The complaint alleges that "on or about October 9, 1936, one Josephine Wester, being then the owner in fee of the realty hereinafter referred to, made, executed and delivered to defendant Albert J. Ruhlman" the document which forms the basis of Ruhlman's claim to a life estate in the property. Thus there is no issue over the execution and delivery of the document. Because of the nature of the contentions of the parties this document should be set forth in full. It reads:

"Subject to the conditions and reservations hereinafter contained, JOSEPHINE WESTER, hereinafter called the 'Grantor' does hereby grant to ALBERT J. RUHLMAN, hereinafter called the 'Grantee,' an estate for the term of his natural life in and to those certain premises in the City and County of San Francisco, State of California, situated on the east side of Arguello Boulevard, north of Clay Street, known and designated as 'No. 126 Arguello Boulevard.'

"The right of the grantee to the use and occupancy of said premises shall commence upon the death of the grantor, and said grantee shall thereupon have the right and privilege of residing upon and using said premises as his dwelling place rent free and without obligation to make expenditures for taxes, insurance or for such repairs as may be necessary to maintain said premises in tenantable condition.

"The life estate hereby granted, including each and all of the rights and privileges of the grantee hereunder, shall continue only as long as, and upon condition that, the said grantee hereinabove named shall personally reside upon, occupy and use said premises as his permanent abode or residence and shall permit no person or persons to share with him such use and occupancy except only any one or more of those who shall have succeeded by devise or descent to the grantor's interest in said property, their spouses and children.

"The grantor further reserves the right during her lifetime to revoke this deed in its entirety, either by a written declaration to that effect executed by said grantor, or by the sale or other disposition of said premises, that is to say, by any act whereby during her lifetime she shall have parted with the ownership thereof.

"IN WITNESS WHEREOF said grantor has executed this conveyance this 9th day of October 1936.

"JOSEPHINE WESTER."

Josephine Wester died September 13, 1939. Prior to that date she had not attempted to revoke the above instrument. Upon her death she devised the property to plaintiffs. The complaint alleges that upon the death of Josephine, Ruhlman went into "possession, use and occupancy" of the premises and remained in such possession until the time of trial. This allegation is admitted by the answer. The evidence shows that sometime after the death of Josephine and prior to October 29, 1942, Ruhlman divorced his first wife, and on the last mentioned date married Lila Eva Ruhlman. The complaint was framed and the case was tried on the theory that after his marriage Ruhlman occupied the premises in question with his wife; that his wife was not one of those designated in the deed who could occupy the premises; that such use and occupancy by the wife with Ruhlman's consent violated the condition subsequent in the deed and resulted in a forfeiture of Ruhlman's life estate.

The finding of the trial court that there had been no breach of the condition subsequent is amply supported. The evidence shows that prior to her marriage to Ruhlman in October of 1942, Mrs. Ruhlman, who had been married before, had lived for over thirty-four years in a large home in San Mateo which now belongs to her. She did not want to live in San Francisco and preferred to maintain her home in San Mateo. Defendant maintained his home in San Francisco,

where his business was located. Defendant testified that after his marriage in October, 1942, and up to the time of trial (November, 1943), he spent a couple of nights a week with his wife at her San Mateo home, but that he spent over 75 per cent of his time in his San Francisco home; that his wife would occasionally visit him in his San Francisco home and occasionally would spend the night there. Defendant estimated that in the year prior to trial his wife had stayed with him in San Francisco not more than a total of ten days, and never more than two days consecutively. His wife is registered as a voter in San Mateo. Defendant had a housekeeper at his San Francisco home who did the cleaning and cooking, and returned to her own home at night. This housekeeper became ill in February of 1943, and shortly thereafter died. After February, defendant's daughter did most of the cleaning while defendant did the shopping, took care of the laundry, etc. Occasionally his wife would come to San Francisco and cook his dinner. Defendant frankly testified that he ultimately intended to make his home with his wife at her house in San Mateo, but was keeping up his San Francisco residence until his difficulties with plaintiffs were settled.

It is clear that there has been no breach of the condition contained in the deed. The exact words of the deed are that the life estate shall continue only as long as "the said grantee . . . shall personally reside upon, occupy and use said premises as his permanent abode or residence and shall permit no person or persons to share with him such use and occupancy. . . ." It is quite obvious that the phrase "such use and occupancy," refers back to "permanent abode or residence," and that to constitute a violation of the condition defendant would have to share his residence with a member of the prohibited class who made the house his or her "permanent abode or residence." It is equally clear that Mrs. Ruhlman did not make the San Francisco home her "permanent abode or residence." ▮ It must be remembered that the law does not favor forfeitures and that a forfeiture will be enforced only where no other interpretation is reasonably possible. Section 1442 of the Civil Code provides: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (See cases collected 6 Cal.Jur. p. 362, § 218.) ▮ Even without the benefit of this salutary rule of construction it is quite obvious that the condition here under construction was not intended to apply to the inter-

mittent use of the premises by one of the prohibited class, but only intended to apply to one of the prohibited class making the home his or her "permanent" home in the sense that one normally speaks of a particular house being his permanent home or residence.

Plaintiffs urge that under the provisions of sections 243 and 244 of the Government Code (formerly § 52 of the Political Code) the residence of a wife follows that of her husband and there can be but one residence which is that of the husband. It is therefore argued that, regardless of what Mrs. Ruhlman actually did or intended, as a matter of law her residence followed that of her husband. The statement of the contention contains its own refutation. It is obvious that the condition in the deed was aimed at preventing a member of the prohibited class from making the San Francisco house his or her permanent abode or residence in the sense that such person was prohibited from physically occupying the house as his or her permanent home. The sections of the Government Code referred to above define the concept of "domicile" rather than the concept of "residence" as that term is used in the deed. It is elementary that a person may have a residence separate from his domicile. (See cases collected 9 Cal. Jur. p. 832, § 2.) Those sections have no application at all to the problem here presented.

Plaintiffs also contend that the document of October 9, 1936, is void and did not create any legal life estate in defendant at all. This contention was not raised by the pleadings, nor was it urged in the trial court. In fact, it is contrary to the theory upon which the pleadings are based and upon which the case was tried. The theory below was that the life estate created by the document of October 9, 1936, was forfeited by the breach of the condition subsequent when defendant got married and permitted his wife to stay on the premises with him. The assumption below was that the life estate was validly created and lasted until terminated by the alleged breach. Now plaintiffs urge that the life estate was void *ab initio*. This all too frequent practice of trying a case on one theory and then urging a completely different theory on appeal has frequently been condemned by the courts as being manifestly unfair to the litigants and to the lower court. (See cases collected 2 Cal.Jur. p. 234, et seq., §§ 67 and 68.) This court would be justified for this reason alone in refusing

to pass upon the point. However, inasmuch as there is no merit in the contention, and inasmuch as the parties have briefed the point, the ends of justice will best be served by disposing of the point so as to put the contention at rest and thus prevent future litigation.

The contention is that the document of October 9, 1936, is testamentary in character, and since it was not executed as a will, it is ineffective for all purposes. In this connection reliance is placed upon the fact that under the document Ruhlman's right of possession did not accrue until the death of Josephine Wester. A reading of the document quoted above demonstrates that what the grantor did was to give to the grantee a life estate in the property, use and occupancy by the grantee to commence on her death, thereby reserving to herself a life estate. It is well settled that in this state, contrary to the early common-law rule, a grantor may reserve to herself a life estate and grant a freehold to commence in the future. This is expressly recognized by sections 767 and 773 of the Civil Code. (See cases collected 9 Cal.Jur. p. 280, § 148; 9 Cal.Jur. p. 332, § 194.)

Plaintiffs also point out that the grantor reserved to herself the right to revoke the deed any time prior to her death, it being urged that this makes the document testamentary in character. This contention is without merit. If a document purports to make a present conveyance of a future interest, the reservation of the power to revoke it does not destroy its effect as a present conveyance nor make the document testamentary in character. (*Tennant* v. *John Tennant Memorial Home*, 167 Cal. 570 [140 P. 242]; *Nichols* v. *Emery*, 109 Cal. 323 [41 P. 1089, 50 Am.St.Rep. 43]; see discussion and cases collected 9 Cal.Jur. p. 103, § 10; 9 Cal.Jur. p. 328, § 192.)

Plaintiffs also contend that, when read as a whole, the document does not purport to effect an immediate transfer of a life interest. A reading of the document demonstrates that this contention is unsound. Emphasis is placed upon the fact that the document "grants no remainder after the so-called life estate." This is of no importance. There is no principle of law that requires the disposition of the remainder interest in property by the same document creating the life estate, or that prohibits the disposition of a life estate by deed and the remainder by will. Plaintiffs also call attention to the fact that the document refers to the duty of her legatees to

make repairs and pay the taxes, and urge that this demonstrates that the document is testamentary in character because it imposes duties on the legatees. That is not a proper interpretation of the document. It is clear that the reference to taxes and repairs measures the extent of the grantee's rights in the property and grants no rights or imposes no duties on legatees. The clause in question simply grants to the grantee a life estate free from the burden of paying taxes or repairs—it measures the extent of the estate that the grantor parted with, and the extent of the remainder interest retained by her. The deed is valid.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 4, 1945.